IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:21-cv-00104-MR

| | |
|---|---|
| DAVID LEE WYATT, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> KILOLO KIJAKAZI, Commissioner ) <br> of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 11].

**I.  PROCEDURAL HISTORY**

The Plaintiff, David Lee Wyatt ("Plaintiff"), filed an application for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of June 28, 2018. [Transcript ("T.") at 15]. The Plaintiff's application was denied initially on April 17, 2019, and upon reconsideration on January 9, 2020. [Id.]. Upon Plaintiff's request, a telephone hearing was held on January 19, 2021, before an Administrative Law Judge ("ALJ"). [Id.]. On January 28, 2021, the ALJ issued a written

decision denying the Plaintiff benefits, finding that the Plaintiff was not disabled within the meaning of the Act since the alleged onset date of June 28, 2018. [Id. at 29]. The Appeals Council denied the Plaintiff's request for review on May 18, 2021, thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 1]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla

2

of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20

C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular

and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

5

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since June 28, 2018, the alleged onset date, and that the Plaintiff meets the insured status requirements through December 31, 2023. [T. at 17]. At step two, the ALJ found that the Plaintiff has severe impairments, including: coronary artery disease, hypertension, osteoarthritis of knees, lumbar and cervical degenerative disc disease, bilateral shoulder impingement, obstructive sleep apnea, depression, and anxiety. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 24]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform medium work as defined in 20 CFR 404.1567(c) except: Frequent, but not continuous, postural activities and should avoid workplace hazards. Able to sustain attention and concentration for 2 hours at a time and can perform unskilled work and carry out routine, repetitive tasks, but no work requiring a production rate or demand pace. Frequent, but not continuous, use of the bilateral upper extremities for pushing, pulling, operating hand controls, as well as reaching in all directions, including overhead. Avoid work environments dealing with crisis situations, complex decision making, or constant changes in a routine setting. Frequent, but not continuous, contact or interactions with coworkers, supervisors, as well as the public.

[Id. at 20].

At step four, the ALJ identified Plaintiff's past relevant work as a computer security specialist. [Id. at 27]. The ALJ observed, however, that the Plaintiff is "unable to perform any past relevant work." [Id.]. At step five, based upon the testimony of the vocational expert ("VE"), the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, the Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including: store laborer, food service worker, and lab equipment cleaner. [Id. at 27-28]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from June 28, 2018, the alleged onset date, through January 28, 2021, the date of the ALJ's decision. [Id. at 29].

## V.  DISCUSSION[1]

As one of his assignments of error, the Plaintiff argues that the ALJ failed to account for the Plaintiff's moderate difficulties with concentration, persistence, or pace in the RFC. [See Doc. 10 at 7-8]. The Commissioner, on the other hand, argues that the RFC is supported by substantial evidence. [Doc. 12 at 19-20].

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

7

The Fourth Circuit has held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio, 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Because "the ability to perform simple tasks differs from the *ability to stay on task*," Mascio, 780 F.3d at 638 (emphasis added), an RFC limited to simple, routine tasks or unskilled work fails to adequately account for moderate limitations in concentration, persistence, and pace.

However, there is no "categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). The ALJ may instead explain why a greater restriction to the RFC was not warranted or the limitations set in the RFC adequately account for the plaintiff's difficulties in concentration, persistence, and pace. See id. at 121-22; Mascio, 780 F.3d at 638 ("ALJ can explain why [a plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a [RFC] limitation.").

In this case, the ALJ found at step two of the sequential evaluation process that the Plaintiff suffers from moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting

8

with others; moderate limitations in concentration, persistence or pace; and moderate limitations in adapting or managing himself. [T. at 19-20]. The ALJ stated that:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant contended that he has limitations in concentrating and following instructions (Exhibit 7E). However, the claimant is able to prepare meals (though not as healthy as recommended, per his wife), watch TV, and handle his own medical care. As noted previously, there is no indication that the claimant has reported such issues to a treatment provider. The claimant alleged poor concentration to the consultative psychological examiner, but the examination findings do not mention deficits in concentration. The claimant was given five numbers (2, 1, 8, 5, 4) and asked to repeat them back immediately. The claimant was able to repeat the numbers back correctly. Claimant was asked to repeat back three numbers (7, 4, 2) in reverse order. The claimant was able to repeat the numbers back correctly (Exhibit 14F/4).

[Id. at 19-20]. The ALJ then noted that:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of the limitation the undersigned has found in the "paragraph B" mental function analysis.

9

[Id. at 20]. It appears the ALJ sought to account for the Plaintiff's limitations in the areas of mental functioning by finding in the RFC that Plaintiff is:

> Able to sustain attention and concentration for 2 hours at a time and can perform unskilled work and carry out routine, repetitive tasks, but no work requiring a production rate or demand pace.

[Id. at 20]. However, the ALJ does not explain how she arrived at the conclusion that Plaintiff can sustain attention and concentration for two hours at a time.

In formulating the Plaintiff's mental RFC limitations, the ALJ recites that:

> In January 2019, the claimant underwent the consultative psychological examination with Dr. Fowler. At that evaluation, the claimant reported memory deficits, intermittent panic attacks, poor concentration, and poor frustration tolerance, which he had not previously mentioned to a treatment provider. He also reported decreased mood more days than not, which is inconsistent with the negative depression screening less than a month earlier (Exhibit 14F/2). The claimant reported cognitive issues significant enough for Dr. Fowler to include cognitive disorder as a rule out, but that seems to have been based mostly on self-report. The claimant's mental status examination was within normal limits other than below average recent memory (because he did not know the examiner's name or the appointment time) and below average remote memory (because he had difficulty specifically remembering his dinner from the previous night or the name of his fifth grade teacher) (Exhibit 14F/4-5). This record does not support the

10

> claimant's reported deficits in memory and cognition. There is also a question of longitudinal history, as the claimant has not reported these issues to other treatment providers. Overall, the undersigned is persuaded that the claimant is able to sustain attention and concentration for 2 hours at a time and can perform unskilled work and carry out routine, repetitive tasks, but no work requiring a production rate or demand pace.

[Id. at 24-25]. The ALJ, however, does not explain how this recitation supports her conclusion that Plaintiff can sustain attention and concentration for two hours at a time.

Further, the ALJ does not cite any medical expert opinion that supports her mental RFC determination. The ALJ states that:

> At reconsideration (Exhibit 3A), the State agency psychological consultant found moderate limitations in all of the "paragraph B" criteria, which is consistent with my findings above. The consultant opined that the claimant is able to perform very short and simple instructions. The claimant is able to perform simple instruction but may have some difficulty in maintaining attention and concentration for 2 hours at a time. The claimant may have some difficulty interacting with coworkers and supervisors. He may have some difficulty adapting to change. The State agency medical consultant opined that the claimant could perform medium work with frequent climbing of ramps, stairs, ladders, ropes, or scaffolds, kneeling, and crawling. These assessments are somewhat persuasive. The State agency examiners did not have the benefit of all of claimant's medical records and do not fully account for his non-exertional limitations and subjective complaints which are

11

> consistent with and supported by the clinical impressions and observations of his providers.

[Id. at 26]. Again, the ALJ gives no explanation as to why she reached the conclusion that Plaintiff could sustain attention and concentration for two hours when the medical opinion she cites as "somewhat persuasive" reached the opposite conclusion. [Id. at 26].

Nowhere in the decision does the ALJ explain how she arrived at the conclusion that Plaintiff can sustain attention and concentration for two hours at a time. Thus, she does not explain how the RFC accounts for Plaintiff's limitations in mental functioning. As a result, the ALJ's decision is "sorely lacking in the analysis" necessary for the Court to meaningfully review the ALJ's conclusions. Mascio, 780 F.3d at 636-37. While the ALJ recited certain evidence in the record, "it is not sufficient for an ALJ to simply recite *what* the evidence is." Mills, 2017 WL 957542, at *4. Instead, an RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion." Mascio, 780 F.3d at 636 (quoting SSR 96-8p). As such, this matter must be remanded because the ALJ failed to "build an accurate and logical bridge from the evidence to [her] conclusion." Monroe, 826 F.3d at 189.

## VI. CONCLUSION

Because this Courts lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. Upon remand, the ALJ must explain whether Plaintiff's moderate limitations translate into functional limitations to "build an accurate and logical bridge from the evidence to her conclusion." Monroe, 826 F.3d at 189 (citation omitted). The ALJ's analysis should include a narrative assessment describing how the evidence supports each conclusion, as required by SSR 96-8p, accounting for the Plaintiff's limitations in understanding, remembering, or applying information; interacting with others; concentration, persistence or pace; adapting or managing oneself, if any, including an assessment of whether Plaintiff can perform work-related tasks for a full workday.

In light of this decision, the Plaintiff's other assignments of error need not be addressed at this time but may be addressed by him on remand.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **GRANTED** and the Defendant's Motion for Judgment for Summary Judgment [Doc. 11] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the

decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 22, 2022

Martin Reidinger
Chief United States District Judge